ELLIOT O. JACKSON
(*Pro Hac Vice* Application Forthcoming)
**HEDIN LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131-3302
Telephone: (305) 357-2107
E-Mail: ejackson@hedinllp.com

ADRIAN GUCOVSCHI
(*Pro Hac Vice* Application Forthcoming)
**GUCOVSCHI LAW FIRM, PLLC**
140 BROADWAY, FL 46
NEW YORK, NY 10005
Telephone: (212) 884-4230
E-Mail: adrian@gr-firm.com

DAVID W. SCOFIELD – 4140
**PETERS | SCOFIELD**
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah 84093-6160
Telephone: (801) 322-2002
E-Mail: dws@psplawyers.com

*Counsel for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| KURT SNEDEKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>HERITAGE SPORTS HOLDINGS LTD.; and SPORTY CITY COSTA RICA S.A.,<br><br>Defendants. | **CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED)<br><br>Case No. 1:25-cv-00178<br>Honorable ______________________<br>United States District Judge |

Plaintiff Kurt Snedeker, individually and on behalf of all others similarly situated, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## INTRODUCTION

1. Heritage Sports Holdings Ltd. and Sporty City Costa Rica S.A. (collectively, "Defendants") own, operate, and receive revenue from the online casinos available at www.heritagesports.eu and www.bet105.ag, where they offer casino-style slots, sportsbooks, racebooks, and table games to anyone interested in wagering money to play them (the "Heritage Gambling Platform").

2. During the applicable three-year period preceding this action, Defendants have systematically accepted wagers from Utah residents – many of whom, including Plaintiff, have lost significant sums of their hard-earned money playing the games offered on the Heritage Gambling Platform – and have reaped enormous profits from the losses sustained by these people.

3. Utah law clearly prohibits what Defendants have done. Utah's Gambling Act prohibits persons from operating or receiving revenue from "fringe gaming devices," "video gaming devices," or "gambling devices or records." Utah Code Ann. § 76-9-1412(1). The games offered on the Heritage Gambling Platform constitute all three of these things, and Defendants have amassed significant revenue

from Plaintiff and numerous others in Utah who have played them.

4. Accordingly, Plaintiff brings this Class Action Complaint, individually and on behalf of all others similarly situated, to redress Defendants' widespread violations of Utah's Gambling Act.

## PARTIES

5. Plaintiff Kurt Snedeker is a natural person and a citizen and resident of and domiciled in Ogden, Utah.

6. Defendant Heritage Sports Holdings Ltd. is a private company organized and existing under the laws of British Virgin Islands, with a place of business in Costa Rica. Defendant Heritage Sports Holdings Ltd. has operated and continues to operate the Heritage Gambling Platform at www.heritagesports.eu and www.bet105.ag, and has received and continues to receive substantial revenue from the losses sustained by players who have wagered and continue to wager on the Heritage Gambling Platform, including Utah residents.

7. Defendant Sporty City Costa Rica S.A. is a private company organized and existing under the laws of Costa Rica, with a place of business in Costa Rica. Defendant Sporty City Costa Rica S.A. has operated and continues to operate the Heritage Gambling Platform at www.heritagesports.eu and www.bet105.ag, and has received and continues to receive substantial revenue from the losses sustained by players who have wagered and continue to wager on the Heritage Gambling

Platform, including Utah residents.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

9. The Court has personal jurisdiction over Defendants and venue is proper in this judicial District because both of the Defendants, acting in concert with one another, purposefully directed the Heritage Gambling Platform to residents of Utah (including by advertising and running promotional materials directed to persons in Utah), knowingly accepted registrations and wagers on the Heritage Gambling Platform from Plaintiff and numerous other persons in Utah, and collected enormous revenues from the losses suffered by Plaintiff and numerous other persons in Utah who placed wagers on the Heritage Gambling Platform, such that a substantial portion of the events that gave rise to Plaintiff's claims occurred in Utah and within this judicial District.

# FACTUAL ALLEGATIONS

## I. Utah's Gambling Act

10. Utah's Gambling Act entitles "[a]n individual who suffers an economic loss as a result of a fringe gaming device, video gaming device, or gambling device or record" to "bring a cause of action against a person who operates or receives revenue from the fringe gaming device, video gaming device, or gambling device or record to recover damages, costs, and attorney fees." Utah Code Ann. § 76-9-1412(1).

11. As defined in Utah's Gambling Act, a "fringe gaming device" is "a mechanically, electrically, or electronically operated machine or device" that:

> (i) is not an amusement device[1] or a vending machine[2];
>
> (ii) is capable of displaying or otherwise presenting information on a screen or through any other mechanism; and
>
> (iii) provides the user with a card, token, credit, gift certificate, product, or opportunity to participate in a contest, game, gaming scheme, or sweepstakes with a potential return of money or other prize.

---

[1] An "amusement device" is "a game that . . . is activated by a coin, token, or other object of consideration or value" and "does not provide the opportunity to," *inter alia*, "enter into a . . . gambling event[.]" *Id.* § 76-9-1401(1)(a)(i)-(ii).

[2] A "vending machine" is "a device . . . that dispenses merchandise in exchange for money or any other item of value[,] provides full and adequate return of the value deposited," and, *inter alia*, "through which the return of value is not conditioned on an element of chance or skill[.]" *Id.* § 76-9-1401(19)(a)-(c).

*Id.* § 76-9-1401(7)(a).

12. A "video gaming device" is defined as "a device that includes all of the following":

> (a) a video display and computer mechanism for playing a game;
>
> (b) the length of play of any single game is not substantially affected by the skill, knowledge, or dexterity of the player;
>
> (c) a meter, tracking, or recording mechanism that records or tracks any money, tokens, games, or credits accumulated or remaining;
>
> (d) a play option that permits a player to spend or risk varying amounts of money, tokens, or credits during a single game, in which the spending or risking of a greater amount of money, tokens, or credits;
>
>> (i) does not significantly extend the length of play time of any single game; and
>>
>> (ii) provides for a chance of greater return of credits, games, or money; and
>
> (e) an operating mechanism that, in order to function, requires inserting money, tokens, or other valuable consideration other than entering the user's name, birthdate, or contact information.

*Id.* § 76-9-1401(20).

13. Finally, a "gambling device or record" is "anything specifically

designed for use in gambling[3] or fringe gambling[4] or used primarily for gambling or fringe gambling." *Id.* § 76-9-1401(10).

14. Utah's Gambling Act provides that an individual who suffers an economic loss as a result of any of the above-defined devices may recover "twice the amount of the economic loss" they suffered. *Id.* § 76-9-1412(1)-(2).

15. As alleged below, during the relevant statutory period, Defendants violated Utah's Gambling Act by accepting wagers and collecting losses from Utah residents through the illicit operation of the Heritage Gambling Platform – which is comprised of "fringe gambling devices," "video gaming devices," and "gambling devices or records" within the meaning of Utah's Gambling Act.

## II. The Evils of Online Gambling

16. Gambling is one of the oldest and heavily regulated human behaviors. Even before the advent of science, religions across the world have recognized the inherent addictive nature of playing games of chance and banned them through

---

[3] "Gambling" is defined as "risking anything of value for a return or risking anything of value upon the outcome of a contest, game, gaming scheme, or gaming device when the return or outcome . . . is based on an element of chance . . . and . . . is in accord with an agreement or understanding that someone will receive anything of value in the event of a certain outcome." *Id.* § 76-9-1401(8)(a).

[4] "Fringe gambling" is defined as "any de facto form of gambling, lottery, fringe gaming device, or video gaming device that is given, conducted, or offered for use or sale by a business in exchange for anything of value or incident to the purchase of another good or service." *Id.* 76-9-1401(6)(a).

biblical injunctions. As religious authority gave way to democratic governments, the vast majority of states in the country enacted legislation prohibiting or strictly regulating gambling activities. Unlike historical relics, these states have recognized that gambling poses a public health risk. Scientific research has confirmed and shed further light on the perils of gambling—ranging from mental health issues to physical, financial, and interpersonal problems.[5]

17. Against this backdrop, many states, including Utah, have been steadfast in maintaining and enforcing their gambling laws, even in the event federal law takes a more permissive approach. As stated by Utah's legislature in enacting the Gambling Act:

> If federal law authorizes online gambling in the states of the United States and provides that individual states may opt out of online gambling, this state shall opt out of online gambling in the manner provided by federal law and within the time frame provided by that law.

Utah Code Ann. § 76-9-1402(4).

18. With technological advances, however, many casinos and other gambling operators proliferated into people's pockets through online websites and apps, including the Heritage Gambling Platform. These online gambling platforms have been particularly challenging to regulate because many states' anti-gambling

---

[5] Harvard Magazine, *Governing Games of Chance* (Feb. 14, 2025), https://www.harvardmagazine.com/2025/03/harvard-research-gambling-public-health-crisis.

statutes were originally enacted to prohibit in-person gambling activities.

19. Worse still, because these online gambling platforms operate outside of the confines of gambling laws, they knowingly rig the odds against users to further exploit them. For example, while slot machines in a physical casino are required to randomize their results, online gambling platforms tailor "wins" and "losses" to manipulate consumer engagement through powerful algorithms. As the CEO of a popular online gambling platform explained:

> The secret sauce of Playtika is our ability to work with AI. We know exactly when a player is going to stop playing. We know exactly when they're going to pay. We know how many times they come in each day. I can't say we can predict with 100 percent accuracy, but we can predict, for most of our players, their activities in our games. That's the real power behind the operations side. When you can predict this, you can find solutions to problems. If someone wants to move on from your game, to delete your app, you know how to handle that player. We sound the alarm. We know how to operate and make sure a player retains in the game.[6]

20. Defendants have employed similar tactics to maximize the profits they reap through the Heritage Gambling Platform.

## III. The Heritage Gambling Platform

21. Defendants own and operate the Heritage Gambling Platform available at www.heritagesports.eu and www.bet105.ag, where visitors, including those in

---

[6] Dean Takahashi, *Playtika CEO Robert Antokol interview— Why player retention matters now, VENTUREBEAT* (Jan. 6, 2022), https://venturebeat.com/games/playtika-ceo-robert-antokol-interview-why-player-retention-mattersnow/.

Utah, can gamble for real money.

22. The process for getting set up with an account to wager on the Heritage Gambling Platform simply requires a person to input basic personal information, including, *inter alia*, his or her name, e-mail address, and phone number, and to select an account password.

23. After creating an account, the person can begin depositing money and wagering the deposited money on games offered on the Heritage Gambling Platform.

24. Deposits can be made with a wide variety of cryptocurrencies or by credit or debit card. Regardless of deposit method, funds deposited on the Heritage Gambling Platform are instantly available for gambling.

25. Users can then gamble their deposited money on any of Defendants' hundreds of games, including a wide variety of slots, sportsbooks, racebooks, and table games.

26. Notably, the outcome of every wager placed on each of the games offered on the Heritage Gambling Platform is based on an element of chance.

27. Defendants maintain win and loss records and account balances for each person who creates an account and places wagers on the Heritage Gambling Platform. Indeed, once Defendants' algorithms determine the outcome of a wager and Defendants display the outcome, Defendants adjust the person's account

balance. Defendants keep detailed records of each wager and its outcome for every player of every game offered on the Heritage Gambling Platform.

28. Using the information provided by users at the time they register for accounts and make deposits, as well as by analyzing users' IP addresses, Defendants have intimate knowledge of, and maintain records reflecting, the geographic locations (including city and state for U.S.-based players) from which each of their users enrolled in, deposited funds onto, and lost wagers on the Heritage Gambling Platform.

29. Thus, at the time Plaintiff and the other members of the Class enrolled in, deposited funds on, and lost wagers playing the games offered on the Heritage Gambling Platform, Defendants had actual knowledge that these persons were located in Utah based on the information they had provided while registering for accounts and making deposits and the IP addresses associated with the devices from which they accessed the Heritage Gambling Platform. Defendants nonetheless happily accepted their wagers and pocketed the losses they sustained playing the games offered on the Heritage Gambling Platform.

30. Through their widespread marketing and promotional campaigns, Defendants have advertised and presented the Heritage Gambling Platform to persons in Utah as a legitimate online business, giving it an aura of legitimacy and legality to Plaintiff and Class members.

31. In reality, the Heritage Gambling Platform is an illegal, unregulated gambling enterprise. By making the Heritage Gambling Platform available in Utah, and receiving millions of dollars in revenue from the losses sustained on the Heritage Gambling Platform by Utah residents, Defendants directly violated Utah's Gambling Act on an enormous scale.

**IV. Plaintiff Kurt Snedeker's Experience**

32. Plaintiff Kurt Snedeker created an account on the Heritage Gambling Platform and, since creating the account, has lost a significant sum of money playing the gambling games offered on the Heritage Gambling Platform, including within the three-year period prior to the filing of this action.

33. At all times relevant hereto, Plaintiff resided in, was a citizen of, and was physically present in Utah.

## CLASS ACTION ALLEGATIONS

34. Plaintiff seeks to represent a class defined as all residents of Utah who lost money as a result of wagers placed on www.heritagesports.eu and www.bet105.ag at any time during the three-year period prior to the filing of this action (continuing through the date of any order granting class certification).

35. Members of the Class are so numerous that their individual joinder herein is impracticable. The members of the Class number in at least the tens of thousands. The precise number of Class members and their identities are unknown

to Plaintiff at this time but will be determined in discovery. The Class may be notified of the pendency of this action at the addresses found in Defendants' records.

36. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether the games offered on the Heritage Gambling Platform are "fringe gaming devices"; (b) whether the games offered on the Heritage Gambling Platform are "video gaming devices"; (c) whether the games offered on the Heritage Gambling Platform are "gambling devices or records"; (d) whether Defendants "operate[] or receive[] revenue from" the games offered on the Heritage Gambling Platform; (e) whether Defendants' acts of accepting wagers and collecting gambling losses from persons in Utah violated Utah's Gambling Act; and (f) the amount of monetary relief the Class is entitled to recover from Defendants.

37. The claim of the named Plaintiff is typical of the claims of the members of the Class in that the named Plaintiff and all Class members suffered monetary loss as a result of wagers placed on Defendants' Heritage Gambling Platform.

38. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of Class members will be fairly

and adequately protected by Plaintiff and his counsel.

39. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication.

## CLAIM FOR RELIEF
**Violation of Utah's Gambling Act, Utah Code Ann.§ 76-9-1401, *et seq*.**
**(By Plaintiff, Individually and on Behalf of the Class, Against all Defendants)**

40. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

41. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendants.

42. Utah's Gambling Act provides that "an individual who suffers an

economic loss as a result of a fringe gaming device, video gaming device, or gambling device or record may bring a cause of action against a person who operates or receives revenue from the fringe gaming device, video gaming device, or gambling device or record to recover damages, costs, and attorney fees." Utah Code Ann. § 76-9-1412(1).

43. During the time period applicable to this action, Plaintiff deposited and wagered real money on games offered on the Heritage Gambling Platform while residing in Utah, which resulted in Plaintiff suffering "economic loss."

44. Likewise, during the time period applicable to this action, at least tens of thousands of other persons (members of the proposed Class) deposited and wagered real money on games offered on the Heritage Gambling Platform while residing in Utah, which resulted in each of these persons suffering "economic loss."

45. All of the games Plaintiff and Class members lost money playing on the Heritage Gambling Platform provided them the "opportunity to . . . enter into a gambling event," and therefore were not "amusement devices" within the meaning of the Act. *Id.* § 76-9-1401(1)(a)(i)-(ii).

46. All of the games Plaintiff and Class members lost money playing on the Heritage Gambling Platform were "conditioned on an element of chance or skill," and therefore were not "vending machines" within the meaning of the Act. *Id.* § 76-9-1401(19)(a)-(c).

47. All of the games offered on the Heritage Gambling Platform and played by Plaintiff and members of the Class were "capable of displaying or otherwise presenting information on a screen or through any other mechanism," and "provide[d] [Plaintiff and Class members] with a . . . token, credit, . . . or opportunity to participate in a contest, game, [or] gaming scheme . . . with a potential return of money." *Id.* § 76-9-1401(7)(a). Accordingly, all of the games Plaintiff and Class members lost money playing on the Heritage Gambling Platform constituted "fringe gaming devices" as defined under the Act. *Id.* § 76-9-1401(7)(a).

48. All of the games offered on the Heritage Gambling Platform and played by Plaintiff and members of the Class included "a video display and computer mechanism for playing a game," "a meter, tracking, or recording mechanism that records or tracks any money, tokens, games, or credits accumulated or remaining," "a play option that permits a player to spend or risk varying amounts of money, tokens, or credits during a single game, in which the spending or risking of a greater amount of money, tokens, or credits . . . does not significantly extend the length of play time of any single game[] and . . . provides for a chance of greater return of credits, games, or money," and "an operating mechanism that, in order to function, requires inserting money, tokens, or other valuable consideration other than entering the user's name, birthdate, or contact information." *Id.* § 76-9-1401(20)(a), (c)-(e). Moreover, "the length of play of any single game [offered on the Heritage Gambling

Platform and played by Plaintiff and members of the Class] [wa]s not substantially affected by the skill, knowledge, or dexterity of the player[.]" *Id.* 76-9-1401(20)(b). Accordingly, all of the games Plaintiff and Class members lost money playing on the Heritage Gambling Platform constituted "video gaming devices" as defined under the Act. *Id.* § 76-9-1401(20).

49. All of the games offered on the Heritage Gambling Platform and played by Plaintiff and members of the Class required Plaintiff and Class members to "risk[] [money] for a return or . . . upon the outcome of a contest, game, gaming scheme, or gaming device when the return or outcome . . . is based on an element of chance . . . and . . . is in accord with an agreement or understanding that [they] will receive [money] in the event of a certain outcome." *Id.* § 76-9-1401(8)(a). Accordingly, Plaintiff and Class members were required to engage in "gambling," as defined under the Act, to play the games offered on the Heritage Gambling Platform.

50. Moreover, because the games offered on the Heritage Gambling Platform required Plaintiff and Class members to engage in "gambling" that was "incident to the purchase of another good or service," such gambling constituted "fringe gambling" within the meaning of the Act. *Id.* § 76-9-1401(6)(a).

51. All of the games offered on the Heritage Gambling Platform and played by Plaintiff and members of the Class were "specifically designed for use in gambling or fringe gambling or used primarily for gambling or fringe gambling."

*Id.* § 76-9-1401(10). Accordingly, all of the games that Plaintiff and Class members lost money playing on the Heritage Gambling Platform constituted "gambling devices or records" as defined under the Act. *Id.* § 76-9-1401(10).

52. During the applicable three-year period preceding the filing of this action, Defendants "operate[d]," and "receive[d]" substantial "revenue" from the wagers placed by Plaintiff and members of the Class on, "the fringe gaming device[s], video gaming device[s], [and] gambling device[s]" offered on the Heritage Gambling Platform. *Id.* § 76-9-1412(1).

53. By operating and receiving revenue from the fringe gaming devices, video gaming devices, and gambling devices or records offered on the Heritage Gambling Platform in Utah, each of the Defendants directly violated Utah's Gambling Act and is liable for damages to Plaintiff and the Class members, in the amount of twice the aggregate sum of the "economic loss[es]" suffered by Plaintiff and Class members as a result of such wagers. *See id.* § 76-9-1412(1)-(2).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendants as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B. For an order declaring that Defendants' conduct as

described herein violated Utah's Gambling Act, § 76-9-1401, *et seq.*;

C. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D. For an award to Plaintiff and each Class member of twice the amount of money Plaintiff and each Class member lost wagering on the Heritage Gambling Platform, as provided by Utah's Gambling Act, Utah Code Ann. § 76-9-1412(1)-(2);

E. For prejudgment interest on all amounts awarded; and

F. For an order awarding reasonable attorneys' fees and costs to counsel for Plaintiff and the Class pursuant to Rule 23 and Utah Code Ann. § 76-9-1412(1).

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: November 5, 2025

Respectfully submitted,

**PETERS | SCOFIELD**
*A Professional Corporation*

/s/ David W. Scofield
DAVID W. SCOFIELD

-and-

**HEDIN LLP**
ELLIOT O. JACKSON*
*Pro Hac Vice* Application Forthcoming

**GUCOVSCHI ROZENSHTEYN, PLLC**
ADRIAN GUCOVSCHI*

*Pro Hac Vice* Admission Forthcoming

*Counsel for Plaintiff and Putative Class*